**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0463n.06
Filed: June 6, 2005

**No. 04-5430**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JANINE A. BILYEU, Individual, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| METROPOLITAN GOVERNMENT OF | ) | MIDDLE DISTRICT OF TENNESSEE |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| by and through its Metropolitan Board of | ) | |
| Education, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: DAUGHTREY and GIBBONS, Circuit Judges, and SARGUS,[*] District Judge.

**PER CURIAM.** The plaintiff, Janine Bilyeu, appeals from the judgment entered in favor of the defendant, the Metropolitan Board of Education, following a bench trial on her claims of gender discrimination, sexual harassment, and retaliation filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. By agreement of the parties, the case was heard by a magistrate judge sitting as the district court. On appeal, we find no reversible error and affirm.

---

[*]The Hon. Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

The record indicates that the plaintiff applied for a teaching position with the Metropolitan Nashville Public Schools and was originally assigned to teach freshman Biology at Martin Luther King Magnet High School. After one year at Martin Luther King, the plaintiff transferred to Nashville School of the Arts, where she taught Wellness and Physics from 1998 through the end of the 2000-2001 school year.

Bilyeu claimed that during her initial interview with Elbert Ross, then the principal at Nashville School of the Arts, Ross commented on her "Kennedy eyes" and, at a later date, stated to her, "Your husband is a lucky man you stay in the shape you are in." She further testified that Ross called her at her home on three separate occasions, twice inquiring whether her husband was home before asking if another teacher had ever made inappropriate comments to or about Bilyeu.

In March 2000, because Bilyeu had been with the school system for three years, Ross evaluated the plaintiff and her work in preparation for a decision on whether to grant her tenure. On March 17, 2000, Bilyeu and Ross met in Ross's office to go over the tenure evaluation and proposed decision. According to the plaintiff, the principal's knees touched her knees under the table "a number of times" in a manner that made her uneasy. Later during the meeting, while discussing the plaintiff's comfort level with the human reproduction unit she was required to teach in the Wellness course, Bilyeu said that Ross asked whether she had "ever been with anybody that has erectile dysfunction." He then inquired what the plaintiff would do for Ross's 22-year-old stepson, who suffered from the

problem. At that point, Bilyeu said, she suggested that the young man see a urologist and attempted to steer Ross's attention back to her evaluation. Although the end result of the meeting was a grant of tenure to Bilyeu, the plaintiff alleged that the conditions of her employment at Nashville School of the Arts under Ross deteriorated significantly from that point onward.

Specifically, the plaintiff testified that, in the fall of the 2000-2001 school year, Ross consistently refused to reimburse her for her purchase of basketball rims for the school gymnasium that she had made with funds appropriated to her for another purpose. She also related that later in the fall, after the plaintiff and Ross exchanged words in the school library regarding the delay in reimbursement, Ross wrote her a letter of discipline, but the next day, offered to "just hug on it," after learning that the plaintiff had spoken to a union representative about the incident. According to Bilyeu, "[i]t was beyond a brotherly hug. It was beyond the scope of an administrator's hug to console someone who had been in the position I had been in. It was very close, it was uncomfortable and I did not reciprocate."

In early 2001, the plaintiff complained about suggestive, inappropriate jokes told by Dale Malleck, a physical education teacher and coach at Nashville School of the Arts. Although Malleck was known to relate such improper jokes in class and in other settings, Bilyeu claimed he also made her the subject of one of his attempts at humor in front of co-workers in the school lunchroom. The plaintiff reported the incident to the appropriate

school authority, and Malleck was eventually disciplined and issued written directives to aid in his rehabilitation.

Bilyeu filed a charge of discrimination with the Equal Employment Opportunity Commission on April 9, 2001, a complaint that was later amended to include acts occurring between March 27, 2001 and May 21, 2001. In that filing, and later before the district court, she alleged sexual harassment as a result of the incidents discussed. Furthermore, the plaintiff alleged gender discrimination based on the facts that she did not receive keys to school locker rooms, dressing rooms, and equipment rooms; that she was not allowed to access certain funds for teams that she coached; that she, but not a male teacher, was forced to move into a portable classroom; and that she was given a larger teaching load than other employees. Bilyeu also alleged that after the filing of her administrative complaints, Ross and the school board retaliated against her by placing other complaints and memos in her permanent file and by docking her one-half day's pay for arriving late at a meeting at the Board of Education headquarters.

In federal court, both parties filed motions for summary judgment. The district court denied Bilyeu's motion, finding that there were disputed issues of material fact that would require an evidentiary hearing. The court granted the defendant's motion in part, dismissing the claim of gender discrimination, and denied summary judgment on the sexual harassment and retaliation claims. The matter then proceeded to trial on the latter two issues, without the intervention of a jury.

At the trial, in response to the plaintiff's evidence outlined above, the defendant relied principally upon the testimony of Ross, who denied that he had engaged in any unprofessional conduct toward Bilyeu. He admitted that he had commented on her eyes, likening their appearance to "Bobby Kennedy's eyes," and that he had complimented her on what good shape she was in – noting that she was, after all, the track coach for some of the students. Ross also admitted that he sometimes engaged in hugging school personnel, apparently in an effort to boost morale. But Ross denied ever speaking to Bilyeu about erectile dysfunction, saying that if his step-son suffered from the condition, he did not know about it, and that he had no recollection of their knees ever touching during the plaintiff's tenure meeting with him.

At the conclusion of the trial, the court dismissed all claims brought by Bilyeu, finding that she had not substantiated them. She now appeals the district court's decision.

As an initial matter, the plaintiff challenges the denial of her motion for summary judgment. She argues that the court continually referred in his memorandum opinion to the evidence adduced by Bilyeu that would support her claims, yet inexplicably refused to rule in her favor in that pretrial determination. This allegation of error, however, represents a basic misunderstanding of summary judgment law. In this case, the court simply concluded that the plaintiff produced sufficient evidence to permit the possibility of a jury verdict for Bilyeu on her hostile work environment claim. It did not find that a jury *must* so rule. In fact, at the conclusion of the trial, the judge, sitting as fact-finder in lieu of a jury,

determined that the defendant had presented sufficient evidence to support *its* legal position in the dispute. Hence, there is no merit to this contention.

The plaintiff next contends that the court erred in allowing the defendant to submit Ross's affidavit after discovery had closed. But the affidavit in question was submitted in response to the plaintiff's motion for summary judgment and was therefore proper under Federal Rule of Civil Procedure 56(c).

The plaintiff raises several issues involving various rulings made by the court during trial. Among other things, she complains about restrictions on the introduction of evidence of retaliation occurring after May 16, 2001. It appears, however, that this limitation was the result of settlement agreements reached with other defendants initially listed in the complaint. The court also properly excluded evidence of allegations made against Ross by individuals other than the plaintiff, because that evidence became irrelevant once the defendant waived its affirmative defense to the plaintiff's allegations of sexual harassment. Likewise, there was no error in permitting Deambrosia Martinez to testify, even though her name was not included on the witness list, because she was called in response to information received during a break in the trial proceedings.

The plaintiff's allegation that the court failed to consider the testimony of her psychiatric expert witness, Dr. Greg Kyser, apparently stems from the fact that the court did not discuss Dr. Kyser's testimony at length in the memorandum opinion in which it announced the outcome of the trial. But the failure to set out the expert's testimony in

detail does not mean that the evidence was not considered. Moreover, the plaintiff has not indicated on appeal what an extended discussion in the opinion would have accomplished. Indeed, our reading of the record suggests that the psychiatrist's testimony may have been more damaging to the plaintiff's case than it was helpful.

Finally, as to the merits of Bilyeu's case, we conclude that the court did not err in finding that she had failed to establish that she was subjected to a hostile work environment or to retaliation for the exercise of a protected right. Because the reasons why judgment should be entered for the defendant have been fully articulated by the court below, the issuance of a more detailed opinion by this court would be duplicative and would serve no useful purpose. Accordingly, we AFFIRM the judgment of the magistrate judge, sitting as the district court, upon the reasoning set out the memorandum opinion filed on February 3, 2004.